IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> BRIAN DAVIS | CRIMINAL ACTION <br> NO. 97-359 |

Pappert, J.                                                                                         January 10, 2025

### MEMORANDUM

Brian Davis—currently serving a 40-year sentence for his participation in two schemes to commit murder—seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The Court denies the motion.

I

In 1998, a jury convicted Davis of racketeering and violent crime in aid of racketeering. (PSR ¶¶ 2–3.) Davis's convictions stemmed from his participation in a Philadelphia-based criminal enterprise led by Louis Turra. (PSR ¶¶ 58, 77.) Among other things, Davis joined in an ultimately unsuccessful scheme to murder Joseph Merlino—a reputed leader in the Philadelphia La Cosa Nostra Crime Family—as part of a feud between the competing criminal enterprises. *See* (PSR ¶ 58.) In exchange for Davis's participation in that effort, Turra promised Davis money and a share of the "action" Turra hoped to inherit upon Merlino's death. (PSR ¶ 75.)

Davis also played a role in the murder of Frank Russo, whom Turra erroneously believed was cooperating with law enforcement. (PSR ¶¶ 76–77.) Specifically, Davis drove an associate to a location in South Philadelphia where Russo was sitting in his car, and the associate shot Russo at close range through the eye. (PSR ¶ 76.) Soon after Davis's convictions in this case, he also pleaded guilty to conspiracy to

1

manufacture and distribute methamphetamine.  *See* (Docket for Criminal Case 97-0383.)

Davis is currently incarcerated at FCI Oxford.  His disciplinary record shows fourteen infractions, including two assaults—one in 2007 and one in 2018—and four infractions since May of 2024 for use of drugs or alcohol, possessing stolen property and gambling paraphernalia, disruptive conduct, and refusing a work or program assignment.  *See* (Brian Davis, Inmate Discipline Data, Chronological Disciplinary Record, Jan. 8, 2025.)  Davis's Bureau of Prisons (BOP) progress report shows that he's earned his GED and completed nearly seventy educational courses.  *See* (Brian Davis, Individualized Needs Plan, Dec. 18, 2024.)  Davis also submitted letters of support from his counselors, his case manager and other BOP officers.  *See* (Mot. for Compassionate Release 9–10, 10 n.3, ex. C–G, ECF No. 625.)  This is Davis's second motion for compassionate release—Judge Joyner denied his first in April 2021.

II

Pursuant to § 3582(c)(1)(A)(i), a sentencing court may reduce an inmate's sentence if it determines that the inmate is both eligible and qualified for such a reduction.  *United States v. Rutherford*, 120 F.4th 360, 364 (3d Cir. 2024).  An inmate is *eligible* for a sentence reduction if he shows that "extraordinary and compelling reasons warrant such a reduction."  *Id.* (quoting § 3582(c)(1)(A)(i)).  Defining "extraordinary and compelling reasons" is generally left to the United States Sentencing Commission.  *Id.* at 365 (citing 28 U.S.C. § 994(t)); *see also* U.S.S.G. § 1B1.13(b)(1)–(6).  The Commission's definitions are binding on courts to the extent those definitions "do not go beyond what Congress intended."  *Id.* at 376.

Once a court determines that an inmate is *eligible* for relief under § 3582(c)(1)(A)(i), it must then determine whether and to what extent the inmate *qualifies* for a sentence reduction. *Id.* at 365. This inquiry invites broad discretion from the district court and requires deciding whether any reduction "is consistent with both the Commission's policy statements and the sentencing factors set forth in 18 U.S.C. § 3553(a)." *Id.* at 365, 364.

### III

Davis invokes subsection (b)(6) of U.S.S.G. § 1B1.13, a provision the Sentencing Commission recently added to its definition of "extraordinary and compelling reasons." *See Rutherford*, 120 F.4th at 366.[1] Under that provision, a court determining whether "extraordinary and compelling reasons" exist is permitted to consider nonretroactive changes in the law that "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S.S.G. § 1B1.13(b)(6). The provision applies only if the inmate "received an unusually long sentence and has served at least 10 years of the term of imprisonment." *Id.* The change in law that Davis invokes is the change from mandatory to advisory sentencing guidelines effected by *United States v. Booker*, 543 U.S. 220 (2005). According to Davis, "it is improbable" that under an advisory-guidelines regime he "would have been sentenced to an aggregated 480-month term of imprisonment," ostensibly because the sentencing court would vary downward from the applicable guideline range or statutory maximum. (Mot. for Compassionate Release 7–8.)

---

[1] Davis also argues that he is rehabilitated, though he acknowledges that rehabilitation on its own cannot constitute extraordinary and compelling reasons. *See* (Mot. for Compassionate Release 12, ECF No. 625); 28 U.S.C. § 994(t).

3

The Government argues in response that subsection (b)(6) is invalid because "it conflicts with controlling statutes and therefore exceeds the authority of the Sentencing Commission to permit reduction of a final sentence." (Gov. Resp. in Opp'n 7, ECF No. 627.) Alternatively, the government argues that there is no "gross disparity" between the 40-year sentence Davis received and the sentence he would likely receive today. The government asserts that the applicable guideline range and statutory penalties[2] have not changed and that Davis's membership in a deadly criminal enterprise would counsel strongly against any downward variance. (*Id.* at 9–10.)

The Court need not take up the parties' arguments with respect to subsection (b)(6) because either way, the balance of the § 3553(a) factors counsel strongly against reducing Davis's sentence.[3] Though the Court is encouraged by Davis's efforts to educate himself and by the positive statements made by BOP officials about his work ethic, mentorship and respectful treatment of others, those factors are outweighed by other considerations under § 3553(a). The circumstances of his offenses of course remain deeply troubling: he participated in an unsuccessful scheme to murder a leader of a competing criminal enterprise as part of a turf war, and he helped murder an individual whom he and his confederates suspected was working with law enforcement. (PSR ¶¶ 16, 58–77.) Davis's criminal history also includes a conviction for conspiracy to manufacture and distribute methamphetamine. *See* (Docket for Criminal Case 97-

---

[2] Davis's guideline range in 1998 and today is life imprisonment. *See* (PSR ¶¶ 92, 126); U.S.S.G. 2E1.1. The statutory maximum for his offenses, in 1998 and today, is forty years total. (PSR ¶ 92); 18 U.S.C. §§ 1963(a); 1959(a)(5).

[3] The Court concluded in 2021 that, notwithstanding the extraordinary and compelling circumstances created by COVID-19 and Davis's serious medical condition, the § 3553(a) factors weighed against release because of Davis's "fractious conduct while incarcerated," the circumstances of his offense, and his involvement "with a gang that manufactured and distributed large quantities of methamphetamines." *See* (Order, April 5, 2021, ECF No. 607.)

5

0383.)  And Davis's disciplinary record continues to cast doubt on his claims that he is reformed and ready to become a law-abiding citizen.  Indeed, Davis's conduct has apparently worsened recently, as he has incurred four infractions in the last year.  *See* (Brian Davis, Inmate Discipline Data, Chronological Disciplinary Record.)

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.